## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

| | |
|---|---|
| HEALTH NET FEDERAL SERVICES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) No. 23-1268 |
| | ) (Judge Holte) |
| Defendant, and | ) |
| | ) |
| TRIWEST HEALTHCARE ALLIANCE CORP., | ) |
| | ) |
| Defendant-Intervenor. | ) |

## DEFENDANT-INTERVENOR'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR DISCOVERY AND SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD

Co-Counsel:

Robert S. Ryland
H. Boyd Greene
Ashley Pincock
Kirkland & Ellis LLP
1301 Pennsylvania Ave., NW
Washington, D.C. 20005
(202) 389-5086
rryland@kirkland.com

Kathleen C. Little
Robert J. Rothwell
Robert D. Vander Lugt
Amanda J. Dietrick
Jenny J. Yang
Little, Rothwell & Vander Lugt PLLC
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 888-6721
amanda.dietrick@lrvlaw.com

Marcia G. Madsen
    *Counsel of Record*
Luke Levasseur
Evan C. Williams
Mayer Brown LLP
1999 K Street, NW
Washington, D.C. 20006
Tel (202) 263-3000
Fax (202) 263-5274
mgmadsen@mayerbrown.com

September 1, 2023                    Counsel for TriWest Healthcare Alliance Corp.

# TABLE OF CONTENTS

Page

I.   Relevant Background .................................................................................. 2

II.  Argument ................................................................................................... 4

    A.  The Legal Standard for Authorizing Discovery in Bid Protest Cases Requires a Threshold Showing of a Plausible Material Misrepresentation Claim .................................................................... 4

    B.  HNFS Has Failed to Make the Required Threshold Showing that TriWest's Proposal Contained a False Statement ................................. 6

        1.  TriWest's Proposals Did Not Contain a False Statement ......................... 8

        2.  TriWest's Representation Regarding its Historical Compliance with FAR 52.219-8 and 52.219-9 Was Not a False Statement ............... 11

        3.  There is No Evidence that TriWest's Proposal Contains an Inconsistency or Contradiction ............................................................. 16

        4.  TriWest's Rationale for Excluding Certain Planned Costs from Its Subcontracting Plan Does Not Evidence a False Statement ................... 18

    C.  HNFS' Remaining Document Requests Are Unsupported and Unnecessary ........................................................................................ 19

        1.  HNFS' Requests for Additional Documents Related to the ▮▮ ▮▮▮ Email Are Unnecessary and Unjustified .................................... 20

        2.  HNFS Fails To Support Request for TriWest's Corporate Documents with "Blue Cross Blue Shield and Other Shareholder Entities" ............................................................................................... 21

        3.  HNFS' Request for Documents Related to TriWest's Teaming Partners, Subcontractors, and Others Should Be Denied ...................... 24

    D.  Interrogatories Posed by HNFS Are Overbroad, Improper, and Unnecessary ........................................................................................ 27

        1.  HNFS' Interrogatories Seek Details of TriWest's Planned Subcontract Spending Not Required by the RFP .................................. 27

            a.  HNFS Offers No Evidence of a Misrepresentation Related to the Information It Seeks in the First Four Interrogatories ....... 27

            b.  HNFS Also Fails To Support its Assertion That TriWest Misrepresented the Total Values of Projected Subcontract Amounts in Its Small Business Subcontracting Plan .................. 29

**TABLE OF CONTENTS**
**(continued)**

Page

c.    HNFS Cannot Properly Ask Detailed Interrogatories About
TriWest's Potential Small Business Performance—
Information That Was Not Sought by the RFP Or
Evaluated by DHA .................................................................. 31

d.    HNFS' Interrogatories Regarding TriWest's *Initial* Small
Business Plan Have Been Overtaken By Events, Are
Irrelevant, and Should Be Denied ............................................... 32

2.    HNFS Is Not Entitled To Additional Information Regarding When
or Whether TriWest Initially Excluded Affiliated and/or Non-
Affiliated Network Subcontractors from Small Business
Subcontracting Plans in Prior Government Procurements ...................... 34

3.    HNFS Presents No Basis to Obtain Discovery Regarding
TriWest's Contracts with a Non-Subject Agency—the VA .................. 35

E.    HNFS' Supplemental Interrogatory and Document Request to the
Government Are Likewise Unsupported and Unnecessary ................................ 37

Conclusion ......................................................................................... 40

## TABLE OF AUTHORITIES

Page

**Cases**

*Ace-Federal Reporters, Inc. v. United States*, 150 Fed. Cl. 94 (2020) ........................................ 16

*AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326 (Fed. Cir. 2018) ........................ 20

*Alaska Structures, Inc. v. United States*, 144 Fed. Cl. 80 (2019) ........................................ *passim*

*Algese 2 s.c.a.r.l. v. United States*, 125 Fed. Cl. 431 (2016) ........................................ 7

*Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374
    (Fed. Cir. 2009) ........................................ *passim*

*Blue & Gold Fleet, LP v. United States*, 70 Fed. Cl. 487 (2006) .................................... 7

*Camp v. Pitts*, 411 U.S. 138 (1973) ........................................ 19

*CGS-ASP Security, JV v. United States*, 162 Fed. Cl. 783 (2022) ................................ 36

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) ................................ 39

*Computer Sciences Corp. v. United States*, 51 Fed. Cl. 297 (2002) .......................... 33

*Connected Global Sols., LLC v. United States*, 159 Fed. Cl. 801 (2022) ..................... 5, 9, 20, 40

*DeLeon Tech. Servs., Inc.*, B-288811 *et al.*, Dec. 12, 2001, 2002 CPD ¶ 10 ............................ 15

*Diversified Maint. Sys., Inc. v. United States,* 93 Fed. Cl. 794 (2010) ........................ 5

*Dolphin Park TT, LLC v. United States*, 159 Fed. Cl. 658 (2022) ............................. 21

*East West, Inc. v. United States*, 100 Fed. Cl. 53 (2011) ............................................ 40

*Golden IT, LLC v. United States*, 157 Fed. Cl. 600 (2022) ........................................ 5

*Guardian Moving & Storage Co., Inc. v. United States*, 122 Fed. Cl. 117 (2015) ..................... 15

*Murakami v. United States*, 46 Fed. Cl. 731 (2000), *aff'd*, 398 F.3d 1342
    (Fed. Cir. 2005)) ........................................ 4

*NEQ, LLC v. United States*, 86 Fed. Cl. 592 (2009) ........................................ 20, 40

*Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338 (2004) ........................................ 5

*Vertex Aerospace, LLC v. United States*, No. 20-700C, 2020 WL 5887750
    (Fed. Cl. Sept 21, 2020) ........................................ 15

*Walden Security v. United States*, 136 Fed. Cl. 216 (2018) ........................................ 14

**Statutes & Regulations**

5 U.S.C. § 706 ........................................ 1

**TABLE OF AUTHORITIES**
(continued)

**Page**

28 U.S.C. § 1491 ........................................................................................................... 1

FAR 2.101 ............................................................................................................... 3, 21

FAR 19.001 ................................................................................................................. 21

FAR 19.704 ...................................................................................................... 8, 12, 28

FAR 52.219-8 ............................................................................................................... 1

FAR 52.219-9 ............................................................................................................... 1

**Miscellaneous**

RCFC Appendix C ....................................................................................................... 33

**DEFENDANT-INTERVENOR'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR DISCOVERY AND SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD**

Pursuant to the Court's orders (ECF Nos. 17, 35), Defendant-Intervenor, TriWest Healthcare Alliance Corp. ("TriWest"), respectfully submits this opposition to Plaintiff, Health Net Federal Services, LLC's ("HNFS"), Motion for Discovery and Supplementation of the Administrative Record, ECF No. 30 ("Discovery Mot.") and Supplemental Motion for Discovery and Supplementation, ECF No. 32 ("Supp. Discovery Mot.").

HNFS' initial motion asks the Court to order TriWest to produce numerous documents that were not considered by the procuring Agency, the Defense Health Agency ("DHA" or the "Agency"), and to answer interrogatories regarding issues not relevant to, or considered during, DHA's source selection process. With the exception of HNFS' second request for document production (to which the Agency has already provided all relevant materials), HNFS' discovery requests to TriWest would transform a plaintiff's very limited ability to obtain discovery and supplement an administrative record in a bid protest—in which the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard is applied[1]—into an expansive factual development exercise to support an unwarranted *de novo* review. HNFS asks the Court for broad discovery based on speculative and unsupported assertions by counsel that TriWest made "material misrepresentations" to DHA and to another agency ████. As demonstrated below, HNFS cannot make the threshold showing that TriWest's proposal contained false representations, and cannot otherwise satisfy the legal standards applicable to its motion. HNFS' motion for discovery from TriWest and to supplement the record should be denied.

---

[1]    *See* 28 U.S.C. § 1491(b)(4) (incorporating the APA standard set forth in 5 U.S.C. § 706).

After the Government provided HNFS' counsel with a document satisfying one of HNFS' initial requests to TriWest, HNFS filed a supplemental motion expanding that request to TriWest and launching demands for documents and a response to a multi-part interrogatory from the Government. In Sections II.C and II.E below, we explain why no additional documents need to be produced in response to HNFS' supplemental motion, and why the additional interrogatory is unsupported.

## I.    Relevant Background

Under the solicitation at issue, Request for Proposals No. HT9402-20-R-0005 ("RFP" or the "Solicitation"), DHA evaluated each offeror's planned use of small business subcontractors in performance of the T-5 contract as described in its Small Business Subcontracting Plan. AR Tab 87 at 5645. The RFP included evaluation Factor 4 under which DHA compared and assessed how an offeror's plan demonstrated a good faith effort to meet the subcontracting goals outlined in the RFP, such as a 25 percent overall small business subcontracting goal. *Id.* The RFP also included FAR clause 52.219-9, Small Business Subcontracting Plan, which permits an offeror to exclude subcontracts with its affiliates from the computation of planned small business utilization. *See id.* at 5559; FAR 52.219-9(l).

After DHA awarded the T-5 contract to TriWest on December 21, 2022, HNFS filed an initial bid protest at the Government Accountability Office ("GAO") challenging various aspects of its proposal and DHA's evaluation, including TriWest's Small Business Subcontracting Plan. HNFS argued that TriWest improperly excluded contracts held by its non-profit owners from the denominator of the calculation (thus allegedly improving TriWest's percentage) on the basis that they were "affiliates." DHA then took corrective action and re-opened discussions with both offerors regarding the small business factor. AR Tab 185. DHA permitted submission of revised

Factor 4 proposals after issuing an evaluation notice ("EN") clarifying that DHA intended to use the definition of "affiliates" at FAR 2.101 in considering which entities an offeror may exclude from the calculation of the percentage of work going to small business under its Small Business Subcontracting Plan. AR Tabs 144, 145.

In response to the agency's corrective action, TriWest submitted a new Small Business Subcontracting Plan, which had been revised to include certain categories of subcontracts that TriWest had previously excluded but that the Agency determined during corrective action were required by the RFP to be included in the plan. *See* AR Tab 150 at 13985-89 The Agency evaluated TriWest's revised proposal, finding its Small Business Subcontracting Plan to be acceptable. The Agency then re-affirmed its award to TriWest on April 20, 2023. AR Tab 167, 168. HNFS filed a second GAO protest on May 1, 2023. AR Tab 190.

In its GAO protest HNFS alleged, among other things, that TriWest made several material misrepresentations related to its planned and historical small business utilization. DHA determined and documented, during its contemporaneous evaluation of TriWest's proposal and the subsequent GAO proceedings, its conclusion that TriWest's proposal did not contain any material misrepresentations. DHA explained that TriWest stated in its Factor 4 proposals what categories of subcontracts were excluded, and that TriWest ultimately submitted through discussions and proposal revisions a subcontracting plan that met the RFP requirements. *See* AR Tab 160 at 14025-27; AR Tab 229 at 17915-24. After reviewing the record and the parties' filings, GAO denied HNFS' material misrepresentation allegations, concluding as follows:

> We concur with the agency that no material misrepresentations occurred in this case. In each case, the awardee's proposal either fully explained its erroneous assumptions and exclusions or correctly excluded certain categories of subcontracts that the solicitation or regulation made clear were exempt.

GAO Decision, AR Tab 234 at 18159.

HNFS' Complaint before this Court, ECF No. 1, raises essentially the same allegations of material misrepresentations related to TriWest's Small Business Subcontracting Plan as those presented to GAO. In its requests for discovery HNFS seeks to validate its suspicions and allegations, and invoke an exception to the presumption against discovery in bid protest cases.

## II.    Argument

### A.    The Legal Standard for Authorizing Discovery in Bid Protest Cases Requires a Threshold Showing of a Plausible Material Misrepresentation Claim

In its discovery request, HNFS purports to set forth the applicable legal standard for supplementation of the administrative record in the context of material misrepresentation allegations. HNFS' motions fail to mention the required threshold showing under the Federal Circuit's and this Court's precedent—*i.e.*, a plausible material misrepresentation claim based on evidence—to support its request for discovery. Instead, HNFS distorts the standard to suggest that the mere allegation of material misrepresentations by TriWest entitles HNFS to discovery. It does not.

The standard for supplementation of the administrative record was made clear by the Federal Circuit in *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009). As explained in *Axiom*, "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" 564 F.3d at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)). "Thus, supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.*

That said, the administrative record "may be supplemented with (and through discovery a party may seek) relevant information that by its very nature would not be found in an agency record." *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343-44 (2004). Stated differently, the Court may authorize discovery in a bid protest applying APA standards if necessary for effective judicial review or if the existing record cannot be trusted." *Diversified Maint. Sys., Inc. v. United States,* 93 Fed. Cl. 794, 802 (2010) (quoting *Axiom*, 564 F.3d at 1380 (internal quotation marks omitted). And indeed, applying this standard, the Court has granted requests for discovery in a small number of bid protests of agency award decisions involving allegations of material misrepresentations. *See*, *e.g.*, *Connected Global Sols., LLC v. United States*, 159 Fed. Cl. 801 (2022); *Alaska Structures, Inc. v. United States*, 144 Fed. Cl. 80, 85 (2019).

Importantly, however, the Court does not automatically open the record to discovery in cases involving material misrepresentations allegations. Rather, in both *Connected Global* and *Alaska Structures*, the Court acknowledged that a plaintiff seeking discovery must make a threshold showing of a plausible claim of inaccurate representation. *Connected Global*, 159 Fed. Cl. at 806; *Alaska Structures*, 144 Fed. Cl. at 85.

For its part, HNFS cites *Golden IT, LLC v. United States* for the proposition that a material misrepresentation claim "necessitates" the Court's consideration of evidence that is not contained in the administrative record. Discovery Mot. at 13 (quoting 157 Fed. Cl. 680, 688 (2022)). In fact, the Court in *Golden IT* found discovery necessary when there was a "*plausible* misrepresentation claim." 157 Fed. Cl. at 688 (emphasis added). HNFS' filing, however, omits any recognition of the preliminary step of making the required threshold showing, let alone any substantive discussion of how its allegations meet the standard under applicable case law.

5

The Court has explained that supplementation of the administrative record should be "very narrowly confined" and that the Court must "guard against unsupported or speculative claims of inaccurate representations being used to circumvent limits on supplementation." *Alaska Structures*, 144 Fed. Cl. at 85. To this end, plaintiffs must present something more than allegations of counsel or innuendo and suspicion to entitle it to discovery in a bid protest proceeding that ordinarily would be confined to the record and subjected to review under the APA's arbitrary and capricious standard. *See id.*

Having established that the correct legal standard requires a threshold showing by HNFS of a plausible claim that TriWest's proposal contained material misrepresentations, we demonstrate that HNFS' allegations are insufficient to justify discovery here.

### B.    HNFS Has Failed to Make the Required Threshold Showing that TriWest's Proposal Contained a False Statement

As discussed above, any attempt to overcome the well-established presumption against allowing discovery in bid protest proceedings before this Court requires a threshold showing by the requesting party. Here, HNFS attempts to justify its request for discovery by repeatedly claiming that material misrepresentations were made by TriWest but failing to point to any evidence of, or even allege that, any specific statements by TriWest were allegedly "false." *See* Discovery Mot., *passim* ("misrepresentation" and variants used 42 times in 27 pages).

In its motion, HNFS identifies four alleged material misrepresentations in TriWest's Factor 4 proposal—misrepresentations which HNFS claims were relied upon by DHA during its evaluation of TriWest's Factor 4 proposal—as follows:

(1) "TriWest misrepresented its subcontracting calculations and commitments and did not submit an accurate initial or revised Factor 4 proposal";

(2) "TriWest misrepresented its historical compliance with FAR 52.219-8 . . . and FAR 52.219-9 . . . in connection with its past performance references";

(3) "TriWest's proposal contained material inconsistencies and representations regarding the identification of subcontractors and their roles in performance"; and

(4) "TriWest conceded . . . that it had historically erroneously calculated its subcontracting spending methodology over the previous ███."

Discovery Mot. at 9-12.

None of these generalized allegations of misrepresentation actually asserts that any specific statement is "false." HNFS' suspicion that there must be some such statement by TriWest at some time during the past ███ that could be considered "false" does not justify a quixotic search to satisfy the threshold standard required to permit discovery in a bid protest. Even if true, HNFS' allegations regarding TriWest's plan here would not establish an objective falsity. Instead, at best, such allegations would raise only a question of the acceptability of TriWest's *initial* Factor 4 proposal or DHA's evaluation of that proposal (which was not the basis of the award being challenged here), or potentially even the sufficiency of the Agency's corrective action (which was not timely challenged)—issues which the Court can resolve on the record without discovery. HNFS' allegations fail to identify any specific inconsistencies or contradictions that might constitute a material misrepresentation or otherwise require discovery (as opposed to simply reviewing DHA's actions based on the existing record).

As acknowledged by HNFS, in order to establish a material misrepresentation, HNFS must "demonstrate that (1) [the awardee] made a *false statement*; and (2) the [agency] relied upon *that false statement* in selecting [the awardee's] proposal for the contract award." *Blue & Gold Fleet, LP v. United States*, 70 Fed. Cl. 487, 495 (2006) (emphasis added), *aff'd*, 492 F.3d 1308 (Fed. Cir. 2007); *see*, *e.g.*, *Algese 2 s.c.a.r.l. v. United States*, 125 Fed. Cl. 431, 437, 442-44 (2016) (awardee certified with respect to the lack of a conviction in a case relating to a federal contract or grants in the past five years, despite extensive extrinsic evidence to the contrary).

While the threshold for discovery is not the existence of an *actual* misrepresentation in the record, HNFS must show "***inconsistencies***, *i.e.*, where different representations may conflict but could also both be true, and ***contradictions*** where one representation must be inaccurate but it is not apparent which one." *Alaska Structures*, 144 Fed. Cl. at 85 (emphasis added).

In its complaint HNFS identifies neither inconsistencies nor contradictions in TriWest's revised subcontracting plan. Tellingly, HNFS does not and cannot point to any specific statement as being objectively false. HNFS' claims of misrepresentation are merely allegations that TriWest's Factor 4 proposal did not meet the RFP's requirements. Thus, HNFS is attempting to convert an ordinary protest challenge regarding the sufficiency of TriWest's proposal and DHA's evaluation thereof—*i.e.*, issues that are appropriately addressed during discussions between DHA and TriWest—into "misrepresentations" demanding ever-expanding discovery based merely on counsel's speculation rather than evidence of any "false" statement.

### 1.    TriWest's Proposals Did Not Contain a False Statement

In its first material misrepresentation allegation, HNFS claims that both TriWest's initial and revised Factor 4 proposals contained inaccurate (*i.e.*, false) information based on the RFP's requirements that Factor 4 proposals should include the following element of FAR 19.704:

> (2) A statement of the total dollars planned to be subcontracted and a statement of the total dollars planned to be subcontracted to small business (including ANCs and Indian tribes), veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business (including ANCs and Indian tribes), and women-owned small business concerns;

AR Tab 87 at 5594.

HNFS alleges that TriWest's initial proposal contained inaccuracies: that TriWest impermissibly omitted certain planned expenditures from its proposed subcontracting plan. Complaint ¶¶ 204-07. As the basis for this assertion, HNFS explains that TriWest's response to

DHA's evaluation notices revealed that TriWest excluded certain spending categories from its initial proposed subcontracting total. *Id.* ¶¶ 79, 206. In short, HNFS asserted that TriWest's initial proposal was "false" because it was based on exclusions that HNFS contends were improper under the applicable regulations. With respect to TriWest's revised proposal, HNFS maintains that TriWest's subcontracting plan continues to improperly exclude certain categories of costs from the proposed subcontracting calculations. *Id.* ¶¶ 98-103, 204, 208-09.

These allegations—even if true—do not offer evidence of a "false" statement, and HNFS has not pointed to any objective falsity. As noted above, TriWest's proposal was required to contain a statement of the total dollars planned to be subcontracted. In response to this instruction, TriWest formulated a subcontracting plan and its Factor 4 proposal indeed included a statement of its total proposed subcontracting spending. The fact that TriWest chose to exclude certain categories from the planned calculation does not mean that any of the information constituted a "false statement"—especially where TriWest specifically explained the basis of its exclusions, as both DHA and GAO concluded. In other words, even if it is true that TriWest's exclusions were inconsistent with requirements in the FAR as a matter of law, it does not follow that TriWest's proposal contained a factually false statement. In this way, HNFS confuses the expected elements of a subcontracting plan with factual statements that may be true or false.

The Court has allowed discovery in cases in which there was evidence that a specific statement or representation was false. For example, in *Alaska Structures*, the plaintiff alleged that the awardee's representations about test results in its proposal did not align with publicly-available product literature, thereby presenting evidence that the representation was untrue. 144 Fed. Cl. at 83-84. Also, in *Connected Global*, the plaintiff alleged that the awardee falsely claimed that its information technology system achieved a higher security level certification than

9

it actually possessed. 159 Fed. Cl. at 803-04. In both cases, the allegations of material misrepresentation put before the Court the question of whether an affirmative statement in the awardee's proposal was objectively true or false, and so the Court allowed discovery into extra-record evidence relevant to the truthfulness of those statements.

Here, by contrast, HNFS presents a legal question not regarding falsity of a statement made by TriWest but instead a question as to whether TriWest's initial subcontracting plan was clearly consistent with the RFP and the FAR. Both TriWest's initial and revised subcontracting plans explained how the total subcontracting spend was calculated, including a table and description of the types of costs that were excluded. *See* AR Tab 102 at 7331-33; AR Tab 150 at 13984-86, 13993-96. Moreover, during discussions, TriWest provided additional details and explanations to DHA about which types of costs were excluded from the subcontracting plan. *See* AR Tabs 144, 146, 148, 150. While HNFS argues that TriWest was not permitted by the RFP or the FAR to exclude those categories of costs, HNFS has not alleged a false statement.

Moreover, TriWest's proposed subcontracting plan was just that: a "plan" for meeting certain small business goals. So in contrast to other aspects of its proposal that contained definitive representations of fact, TriWest's subcontracting plan described various features of its proposed subcontracting approach—a plan for future action, including a proposed total for projected subcontract spending over nine years. Any discovery related to a comprehensive list of proposed subcontractors will not lead to evidence relevant to any party's claims or defenses because the RFP did require the offerors to submit such a list, much less copies of subcontracts, teaming agreements and articles of incorporation or other corporate documents. Indeed, HNFS' proposal itself did not include any such commitments or the submission of any such documents.

10

For these reasons, HNFS' allegation fails to overcome the presumption against discovery in this case.

**2.      TriWest's Representation Regarding its Historical Compliance with FAR 52.219-8 and 52.219-9 Was Not a False Statement**

In its second allegation, HNFS asserts that TriWest misrepresented its historical compliance with FAR 219-8, Utilization of Small Business Concerns, and FAR 52.219-9, Small Business Subcontracting Plan in connection with TriWest's past performance references.

The RFP required submission of eSRS reports concerning past achievement of goals established for small business subcontracting in accordance with the subcontracting plans approved for other government contracts. RFP Section L.7.7 instructed offerors as follows:

> The Offeror *shall submit a record of its compliance* with FAR 52.219-8 Utilization of Small Business Concerns and 52.219-9, Small Business Subcontracting Plan including past eSRS, if applicable, and all correspondence with the cognizant CO or Small Business Specialist regarding its compliance for the past three (3) years on current or past Government contracts.

AR Tab 87 at 5613 (emphasis added). Citing this requirement, HNFS claims that TriWest represented that it complied with these clauses in the PC3, CCN R4, and CCN R5 contracts with the Department of Veteran's Affairs ("VA"), and that this representation was false. As evidence of this claim, HNFS points to TriWest's statement to DHA (during discussions) that it excluded certain categories of costs from its subcontracting plan in the instant procurement based on a ██████ email from a ████████████████████████████. HNFS speculates that this indicates TriWest must have made erroneous exclusions from the subcontracting plans in the subsequent VA contracts, so TriWest could not have actually complied with the terms of those contracts.

11

HNFS' claims regarding TriWest's historical compliance with contracts with VA fails to make a threshold showing of a plausible material misrepresentation for at least three reasons.

**First**, TriWest did not make any factual representations to DHA about how it structured its subcontracting plans under those VA contracts. That is, the RFP did not require—and HNFS does not allege—that TriWest actually made any factual representations regarding the contents of subcontracting plans accepted by other agencies, including how TriWest calculated its projected subcontracting costs, or which costs were included or excluded from those plans.

HNFS cannot deny that the RFP required TriWest only to "submit a record of its compliance" with FAR 52.219-8 and 52.219-9. Thus, as a matter of law, TriWest was not required to make a factual representation regarding its past performance that HNFS can show is false. In fact, the record shows that, in accordance with the RFP, TriWest submitted its eSRS reports in its Volume III proposal. AR Tab 104 at 10165-200. Simply put, TriWest was instructed to submit a record of compliance, and that is what TriWest did. Thus, HNFS has not sufficiently alleged TriWest's submission of its compliance record was objectively false.

**Second**, HNFS' allegation is premised on a faulty understanding of the applicable standard of "compliance" under FAR 52.219-9. HNFS claims that "TriWest conceded in its corrective action discussions with DHA that since ████ TriWest had erroneously calculated its subcontracting spend by excluding large swaths of spending from consideration for small business performance." Discovery Mot. at 10 (citing Complaint ¶ 217). HNFS assumes that TriWest's subcontracting plans for its VA contract were likely not structured properly under FAR 19.704, but HNFS does not explain how such an assumption shows noncompliance with FAR 52.219-9. In this regard, HNFS' allegation fails to recognize that compliance with FAR

52.219-9 is based on the subcontracting plans that were actually negotiated and accepted by non-subject agencies, *i.e.,* by agencies other than DoD which conducted the T-5 procurement at issue.

Under FAR 52.219-9, offerors submit and negotiate with a procuring agency an acceptable subcontracting plan that addresses various small business categories.[2] The clause provides that "the subcontracting plan shall be negotiated within the time specified by the contracting officer" and that "[t]he subcontracting plan shall be included in and made part of the resultant contract." FAR 52.219-9(c)(1). Of particular relevance here, the clause establishes a standard for determining whether the contractor's performance is in compliance:

> (k) The failure of the Contractor or subcontractor to comply in good faith with (1) the clause of this contract entitled "Utilization Of Small Business Concerns;" [FAR 52.219-8] or (2) *an approved plan required by this clause*, shall be a material breach of the contract and may be considered in any past performance evaluation of the Contractor.

FAR 52.219-9(k) (emphasis added). Thus, by its terms, compliance is measured in terms of a contractor's compliance with a plan approved and included in a contract with the clause.[3]

HNFS' allegation, however, rests not on whether TriWest complied with subcontracting plans negotiated with VA and incorporated into the VA contracts, but rather a complaint regarding whether TriWest's subcontracting plans were properly accepted by the VA under terms of other procurements that were completed long ago and are not properly before the Court. At bottom, HNFS contends that if TriWest's subcontracting plans submitted to VA had excluded categories of costs that should not have been excluded by VA then TriWest necessarily could not

---

[2]    As to the contents of the subcontracting plan, the clause directs an offeror to include small business subcontracting goals, expressed in terms of total dollars subcontracted, and as a percentage of total planned subcontracting dollars. FAR 52.219-9(d)(1).

[3]    Although HNFS asserts that TriWest has mispresented its compliance with FAR 52.219-8, HNFS has not identified a particular provision in that clause that TriWest allegedly violated.

show historical compliance with FAR 52.219-9. This allegation ignores the fact that compliance is to be measured by TriWest's performance in relation to the subcontracting plan that was actually negotiated with and accepted by the VA in its discretion, not against some theoretical plan that "should"—according to Plaintiff—have been accepted by the VA. Plainly, HNFS' protest of the acceptability of subcontracting plans submitted in other procurements conducted by VA has been brought several years too late in this Court.

As to the question of compliance, the uncontradicted record evidence indicates that TriWest accurately represented that VA reported TriWest as being in compliance with the approved subcontracting plans as accepted in those contracts. In particular, the official CPARs and PPQs from VA regarding those contracts all indicated that TriWest was compliant with respect to small business subcontracting requirements (*e.g.*, FAR 52.219-9). *See* AR Tabs 121-22. The general rule is that a procuring agency can rely on such representations in the past performance evaluation. *DeLeon Tech. Servs., Inc., et al.*, B-288811 *et al.*, Dec. 12, 2001, 2002 CPD ¶ 10 at 4-5 (finding agency may reasonably rely on responses to past performance questionnaires from the agency holding the contracts in evaluating past performance). And indeed, when the Court reviews an evaluation of past performance in a procurement, "the greatest deference possible is given to the agency—what our Court has called a 'triple whammy of deference.'" *Walden Security v. United States*, 136 Fed. Cl. 216, 229 (2018).

HNFS' allegations do not offer evidence that TriWest's "submission of a record of compliance" contained objectively false information. On this point, HNFS does not claim that substance of the CPARs or PPQs is inconsistent with TriWest's representations. Neither does HNFS claim that the CPARs or PPQs inaccurately reflect VA's assessment of TriWest's compliance with the terms of those contracts. To the contrary, the undisputed record evidence

14

confirms that VA, in fact, found TriWest to be in compliance with the small business subcontracting requirements of the contracts at issue, and the HNFS does not challenge the accuracy of those government records or the information concerning past performance that those records contain.[4] Therefore, HNFS offers no evidence of a false statement, which is a prerequisite for a plausible claim of material misrepresentation.

*Third*, to the extent that HNFS makes a collateral attack on the underlying merits of the VA's past performance assessment, such a challenge fails to make a plausible claim of misrepresentation related to the T-5 procurement. Here, HNFS contends that even if TriWest complied with the terms of the subcontracting plans that were actually negotiated and incorporated into the VA's contracts, the VA should not have accepted subcontracting plans that TriWest submitted to that non-subject agency. Assuming for the sake of argument that those plans contained erroneous exclusions and that the VA erred when it negotiated and accepted those plans, such facts would not provide a basis for discovery in this protest because HNFS has no standing to raise such a challenge under the present action protesting the T-5 award. *See, e.g.*, *Guardian Moving & Storage Co., Inc. v. United States*, 122 Fed. Cl. 117, 138-139 (2015) ("[I]f the agency accepts a proposal based on a misleading representation, the dispute is solely between the agency and the awardee as a matter of contract administration."); *Vertex Aerospace, LLC v. United States*, No. 20-700C, 2020 WL 5887750, at 7 (Fed. Cl. Sept 21, 2020) (same).

Moreover, any discovery related to the validity of VA's past performance assessments would be irrelevant to whether TriWest's proposal to DHA contained a false statement because

---

[4]    Moreover, even if there was an issue with TriWest's performance of a VA contract, it is the administering contracting office's responsibility to determine whether TriWest's performance was acceptable. There is no jurisdiction for this Court to make *post hoc* assessments of contract administration to determine *de novo* whether TriWest complied with its VA contracts.

when TriWest submitted its proposal the CPARs and PPQs had been issued to DHA. In other

words, even if it were shown (after a *de novo* review) that the VA could have assessed TriWest's

performance differently, that would not transform TriWest's submission of its record of

compliance with FAR 52.219-9 into a false statement. *See Ace-Federal Reporters, Inc. v. United

States*, 150 Fed. Cl. 94, 111 (2020) ("Supplementing the record with defendant-intervenor's

previous contracts and transcripts would invite the Court to consider a matter of management of

an expired contract, thereby confusing the issues in this case and placing the Court in a position

to conduct a *de novo* review of the [agency's] past performance evaluation.").

Accordingly, the Court should conclude that HNFS' allegation related to TriWest's

historical compliance with small business subcontracting requirements with another agency does

not meet the threshold for a material misrepresentation claim on the current procurement.

### 3. There is No Evidence that TriWest's Proposal Contains an Inconsistency or Contradiction

HNFS expressly alleges that "TriWest's proposal contained material inconsistencies and

representations regarding the identification of subcontractors and their proposed roles in

performance. Discovery Mot. at 14 (citing Complaint ¶¶ 225-37). In support, however, HNFS

does not identify any specific inconsistencies or contradictions that were evident from the GAO

record, which was the basis of HNFS' complaint. Rather, HNFS attempts to reverse-engineer

TriWest's subcontracting plan and speculates TriWest's proposal contained an inconsistency:

> The only way TriWest could have accomplished this feat would be by
> eliminating spending on its other-than small business subcontracting (thus
> increasing its small business spending), but DHA's corrective action did
> not permit revisions to offerors' technical or price proposals—thus
> demonstrating a material inconsistency in TriWest's proposal.

*Id*. But asserting that an inconsistency *may* exist based on a plaintiff's multi-tiered speculation is hardly evidence that an inconsistency actually exists. *See* GAO Decision, AR Tab 234 at 18153-54 n.12 (dismissing protest that "relies entirely on a questionable chain of inferences").

Although COFC case law suggests that an "explicit contradiction should not be required to grant discovery," a plaintiff requesting discovery must still provide some evidentiary basis—either in the record or through extrinsic evidence—supporting a threshold showing that "make[s] plausible the inaccurate representation claim." *Alaska Structures*, 144 Fed. Cl. at 85-86. Indeed, as noted above, in *Alaska Structures* the Court found that the threshold for discovery is inconsistencies or contradictions in the record (rather than actual misrepresentations). *Id.* at 85. HNFS' speculation alone is insufficient for two reasons.

***First***, as an initial matter, HNFS' request for discovery is premature. As stated above, HNFS claims that TriWest's proposal contains a "material inconsistency" without identifying where the asserted conflict exists in TriWest's submission to DHA. HNFS tacitly acknowledges its failure when it complains that DHA withheld production of certain portions of TriWest's proposal from the record before GAO and blames that non-production for its inability to establish the actual contradiction it needs to show the Court. In contrast, the entirety of TriWest's proposal will be included in the administrative record. Thus, HNFS' request for discovery is not yet ripe, as any inconsistency in TriWest's proposal will (or will not) be evident in the existing record.

***Second***, HNFS' claim that subcontractors discussed in TriWest's technical proposal were not listed in its subcontracting plan (and possibly *vice versa*), even if true, does not show an inconsistency or contradiction in TriWest's proposal. No such duplication or cross-referencing was required by the RFP, and any demand to that effect should have been brought as a pre-award

protest. Therefore, the fact that not all potential subcontractors were listed consistently in various portions of TriWest's proposal is of no consequence and offers no evidence of an inconsistency or contradiction with respect to TriWest's planned use of subcontractors.

### 4.      TriWest's Rationale for Excluding Certain Planned Costs from Its Subcontracting Plan Does Not Evidence a False Statement

Finally, HNFS attempts to justify discovery based on its allegation that DHA unreasonably accepted TriWest's initial subcontracting plan, as submitted ***before*** corrective action, despite TriWest explaining its rationale for excluding certain costs from the plan. Discovery Mot. at 11-12 (citing Complaint ¶ 238-46). According to HNFS, the record shows that DHA failed to conduct any type of analysis regarding TriWest's representations.

Note that this allegation does not assert that either of TriWest's T-5 subcontracting plans—the initial plan submitted before corrective action or the revised plan submitted during corrective action—contains a false statement or an inconsistency. Instead, HNFS claims that TriWest explained why it excluded certain costs, and that DHA failed to adequately evaluate that explanation. Again, even assuming the record does support HNFS' allegation, there would be no showing that TriWest made an objectively false statement or that TriWest made contradictory statements. Instead, HNFS simply argues that DHA's evaluation of TriWest's revised subcontracting plan was arbitrary and capricious. It is not an allegation that requires discovery.

Additionally, much like the allegation related to TriWest's historical compliance (discussed above), HNFS is attempting to open the door to a *de novo* review of TriWest's performance on other contracts. Such an inquiry is plainly irrelevant to a challenge to the reasonableness of DHA's evaluation under the arbitrary and capricious standard.

\*\*\*

HNFS' allegations do not overcome the presumption against discovery in bid protest cases challenging agency award decisions before this Court. In order to overcome this presumption, HNFS is required make a threshold showing of a plausible misrepresentation—*i.e.*, HNFS must show TriWest's proposal contained false or inaccurate statements. As discussed above, HNFS' allegations fail to meet this standard because they pose only a straight-forward disagreement with DHA's evaluation of TriWest's proposal under the RFP, challenge TriWest's performance on contracts with another agency, and are unsuitable for discovery. Consequently, the Court should reject the discovery requests based on the allegations presented.

### C.      HNFS' Remaining Document Requests Are Unsupported and Unnecessary

As explained above, the Federal Circuit's standard for supplementation of an administrative record, as set forth in the *Axiom* decision, makes clear that "the parties' ability to supplement the administrative record is limited" because "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" 564 F.3d at 1379 (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). In explaining its rationale for the strict limitation on supplementation, the Court stated:

> The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to "convert the 'arbitrary and capricious' standard into effectively de novo review." Thus, supplementation of the record should be limited to cases in which "the omission of extra-record evidence precludes effective judicial review."

*Id.* at 1380 (citations omitted). Applying this standard, this Court has stated that "[i]f the documents were not 'before the agency when it made its final decision,' then it is impossible for them to be considered 'documentation revealing the agency's decision-making process.'" *Dolphin Park TT, LLC v. United States*, 159 Fed. Cl. 658, 671 (2022) (citations omitted). And when performing this analysis, the Court is "required to explain why the evidence omitted from

the record frustrate[s] judicial review as to the ultimate question of whether the award . . . was arbitrary and capricious." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (citing *Axiom*, 564 F.3d at 1379-80).

The very purpose of that limitation is highlighted by the nature of the additional documents HNFS seeks in discovery, which are plainly not needed for effective judicial review. In short, HNFS asks the Court to supplement the record with material which was not before the Agency during its evaluation, for the purpose of asking this Court to conduct a *de novo* review of TriWest's proposal and the evaluation. Neither supplementation nor discovery is permissible "merely because the proponent of such measures believes that it will 'improve the court's "understanding" of a case.'" *Connected Glob.*, 159 Fed. Cl. at 805 (quoting *NEQ, LLC v. United States*, 86 Fed. Cl. 592, 593 (2009)). Because the existing record provides all documentation that was before DHA when it evaluated proposals—and contains all information needed for effective judicial review of DHA's procurement decision—the Court should deny the discovery requests.

### 1.    HNFS' Requests for Additional Documents Related to the ███████ Email Are Unnecessary and Unjustified

In Document Request No. 2, HNFS seeks the "full ███ email correspondence (including any surrounding communications necessary for context) between TriWest and ███████ ████████████████████████████████████." Discovery Mot. at 17. In its Supplemental Discovery Motion (at 4-5), HNFS clarified Request No. 2 for materials related to the ████ email. The administrative record, however, contains the documents related to the ████ email that were considered by the agency during the T-5 source selection. AR Tabs 424, 425. Even assuming that such other materials related to communications between Mr. ██████ and TriWest exist, HNFS has not shown they were considered by the Agency for the T-5 source selection and are, therefore, not relevant to this action. Thus, the Court should not order TriWest

20

████████████████████████████████████████████
████████████████████████████████████████

to produce to produce additional, documents based on HNFS suspicion and speculation.[5]

### 2. HNFS Fails To Support Request for TriWest's Corporate Documents with "Blue Cross Blue Shield and Other Shareholder Entities"

In both its initial (pre-corrective action) and revised subcontracting plans, TriWest did not include its network subcontractors that are also shareholders in TriWest's holding company, TriWest Alliance, Inc., because those companies (called "shareholder network subcontractors" below and by HNFS) are "affiliates" of TriWest under the definition that DHA announced would apply to the T-5 procurement.[6] HNFS argues here (as it did before GAO) that the shareholder network subcontractors are not "affiliates" under FAR 2.101 because (1) they are not "concern[s] . . . organized for profit" under a purportedly applicable Small Business Administration regulation, FAR 19.001, and (2) those network subcontractors "do not 'control' TriWest" pursuant to FAR 2.101 (requiring "control" of such companies to be "affiliates"). Complaint ¶¶ 70-72; *see* AR Tab 234 at 18155-56.

---

[5]    HNFS' own explanation of its need for the discovery regarding the ▮▮▮ email to TriWest from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ actually demonstrates that the requested discovery is not needed. HNFS has twice argued: "The purported email correspondence between TriWest and ▮▮▮▮▮▮▮▮▮ appears to be the singular basis on which TriWest maintains that its impermissible subcontracting exclusions for certain subcontractors were not made in bad faith." Discovery Mot. at 17; *see* Supp. Discovery Mot. at 2. Thus, HNFS demands discovery based on its suspicion that TriWest's response to EN 02 was a misrepresentation. In its response to EN 02 during Corrective Action, however, TriWest stated that it "believed in good faith that these costs could be excluded in reliance on guidance provided by a ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which we believed when developing this plan allowed us to exclude all Network Subcontractors (affiliated and non-affiliated) from the subcontracting plan." AR Tab at 13987. That statement is plainly not a misrepresentation, as ▮▮▮ email at issue states: "I agree network agreements are not subcontracts." AR Tab 424 at 58025. Given that this document is already in the record and given that it validates TriWest's EN 02 response (and its explanation of why network agreements were excluded from its initial proposal before corrective action), it is apparent that there was no lack of "good faith" or "misrepresentation" or false statement as alleged by HNFS—and no need for discovery on this issue.

[6]    DHA announced that the FAR 2.101 definition would govern the meaning of "affiliate." *See* Complaint ¶ 48; AR Tab 148 at 13969; AR Tab 149 at 13975 (ENs dated Feb. 24, 2023).

In its **Document Request No. 1**, HNFS asks the Court to order that TriWest:

> Produce [its] "Healthcare Network Agreements" ["HNA"] and "Strategic
> Alliance Agreements" ["SAA"] identified in TriWest's February 21, 2023
> response to DHA's EN 1, Question 5 as explaining TriWest's corporate
> structure and contractual relationship with Blue Cross Blue Shield and
> other shareholder entities ([AR Tab 146 at 13957]).

Discovery Mot. at 15. HNFS argues these documents related to TriWest's corporate structure are

relevant to "the question of whether all or any of the network subcontractors 'control' TriWest,

as well as their scopes of responsibilities" with respect to performance of the T-5 contract. *Id.*

HNFS argues that "if the network subcontractors do not 'control' TriWest, TriWest's assertion to

the contrary is false," and as a result, the costs associated with the network subcontractors should

have been "considered in TriWest's subcontract spending denominator." *Id.*

HNFS further argues it is entitled to review TriWest's Strategic Alliance Agreement

("SAA") because it is "plainly relevant to the question of control" and thus "must be produced,

as it is critical to permitting effective judicial review of HNFS' material misrepresentation

allegations." *Id.* at 16. HNFS makes a similar argument regarding TriWest's Healthcare Network

Agreements ("HNAs"). *See id.* at 16-17. But HNFS' assertion that the SAA "is plainly relevant

to the question of control" is not sufficient to make that document or the HNAs subject to

discovery or production in a protest under the APA standard, because HNFS does not make a

coherent, much less compelling, argument that these documents would reveal a false statement.

HNFS relies merely on its suspicion that some information in the SAA and HNAs might

undermine TriWest's explanation that its shareholder network subcontractors exercise "control"

under Delaware's Close Corporation statute and FAR 2.101—an explanation that DHA found

reasonable based on materials provided in response to ENs (AR Tab 160 at 14025; AR Tab 161

at 14030; AR Tab 166 at 14054), and that GAO also determined was reasonable. AR Tab 234 at 18156-57.

HNFS speculates TriWest's shareholder network subcontractors might not "control" TriWest Alliance, Inc. (and TriWest) and therefore might not be "affiliates" of TriWest under FAR 2.101. During corrective action, however, TriWest provided substantial details regarding its corporate structure to DHA (*e.g.*, AR Tab 150 at 13986), which reviewed that information and concluded that TriWest reasonably considers its shareholders to be affiliates under FAR 2.101. *See* AR Tab 160 at 14025. Before this Court, HNFS may argue that TriWest's analysis of "control" under applicable Delaware law and for purposes of FAR 2.101—and the Agency's and GAO's conclusions, based on TriWest's materials—were unsupported and wrong. But even if the Court disagrees with TriWest's analysis, which was accepted by DHA and GAO, any such speculation by HNFS counsel does not constitute evidence that a factual misrepresentation has been made. HNFS cites no support for the notion that a protester's own disagreement with the agency regarding the awardee's corporate structure and about Delaware corporate law and the definition of "affiliate" under FAR 2.101 would constitute a ***factual*** misrepresentation.

In short, requiring TriWest to produce the SAA and HNAs would improperly convert the applicable arbitrary and capricious standard into an improper *de novo* review. *See Axiom*, 564 F.3d at 1379-80. The Agency made its decision, which GAO found reasonable, based on the record before the Agency during corrective action. The requested discovery would amount to a classic fishing expedition in search of evidence that has not even been hinted at by HNFS. Mere suspicions harbored by HNFS' counsel do not constitute evidence of a false statement and offer nothing relevant to the Court's consideration of the determination by the Agency which was made without reviewing or referring to the requested documents. The Court can properly analyze

whether the existing record is satisfactory for the Agency to have made a non-arbitrary and capricious determination of the control issue. Ordering discovery based on HNFS' vain hope that they might call DHA's decision into doubt would constitute the *de novo* review that *Axiom* precludes.

Finally, HNFS does not (and cannot) argue that the requested corporate and network contracting documents such as the SAA and HNAs were required to be submitted to DHA under the RFP's instructions, or that the RFP's evaluation criteria (Section M) required DHA to evaluate such materials. Indeed, HNFS submitted no such documents to DHA. Accordingly, there is no reason why TriWest's should have submitted such documents with its Factor 4 proposal, nor was DHA required to request or review such documents. Because DHA's record of materials considered by the Agency during source selection (both pre- and post-corrective action) will doubtless allow HNFS to make whatever arguments it may choose to make related to DHA's evaluation during corrective action, HNFS' discovery requests should be denied.

### 3.    HNFS' Request for Documents Related to TriWest's Teaming Partners, Subcontractors and Others Should Be Denied

HNFS' third document production request seeks materials related to TriWest's plans for teaming partners or subcontractors. Specifically, in **Document Request No. 3**, HNFS asks the Court to order that TriWest:

> Produce all teaming agreements, subcontracts, contracts, and amendments thereto between TriWest and entities TriWest proposed (in both its July 20, 2022 original proposal and March 3, 2023 revised proposal) to rely on for performance of the T-5 contract.

Discovery Mot. at 19.

HNFS explains that it seeks the requested documents to support its claim that TriWest's revised proposal "misrepresented its small business plan and participation" and "introduced

material inconsistencies into its proposal." *Id.* at 20. HNFS asserts that during corrective action, TriWest "add[ed] $███████ in previously excluded other-than-small business subcontracts for 'non-biddable' costs and $███████ in other-than-small business subcontracts for 'non-affiliated network subcontractors' to TriWest's revised Factor 4 proposal." *Id.* at 19; *see* Complaint ¶ 230. HNFS claims that "because the record" from the Agency (at GAO) "is otherwise devoid of any explanation as to how TriWest made these wholesale changes," HNFS should be provided these underlying documents to examine "how TriWest added over ████ ███████████████████████ in business spending without affecting its technical or cost/price proposal volumes." Discovery Mot. at 20.

Nowhere does HNFS identify any "misrepresentation" that purportedly would justify the discovery it seeks. In short, HNFS is arguing that TriWest's revised subcontracting plan does not match aspects of TriWest's previously-submitted technical proposal (which was not modified as part of corrective action). *See, e.g.*, Complaint ¶¶ 226-37. Complaints about such purported inconsistencies are standard bid protest complaints; indeed, HNFS pursued these same allegations earlier, and GAO determined that "there is no reason to conclude that changes in ancillary support services, even if they ultimately support statement of work requirements, would necessarily affect TriWest's technical proposal." AR Tab 234 at 18153-54 n.12.

TriWest's technical proposal and revised Small Business Subcontracting Plan are included in the record before the Court, so if there is a material inconsistency between these parts of TriWest's proposal then HNFS will have everything it requires to demonstrate how—under that RFP—TriWest's subcontracting plan may have been deficient or materially inconsistent.

In addition, HNFS' request that the Court order TriWest to produce subcontractor teaming agreements, subcontracts, contracts, and amendments is far beyond anything the RFP

████████████████████████████████████

ever instructed offerors to provide, or stated that the Agency must or would evaluate. As explained in more detail in Section II.D.2.c below, RFP Section L.5.2 required that each offeror submit a "subcontracting plan" consistent with several FAR and DFARS provisions, including FAR 19.704 (from which the "13 elements" of the Small Business Subcontracting Plan identified in Section L.5.2 were drawn). *See* AR Tab 87 at 5594; *see also* FAR 52.219-9(d). Neither the RFP nor any incorporated FAR provision, however, required submission of the agreements HNFS asks that TriWest be ordered to produce. Instead, the RFP directed submission of a ***plan*** regarding small business subcontractors, not a demonstration that small businesses were already under contract and ready to perform or even parties to a teaming agreement. Indeed, HNFS did not submit "teaming agreements, subcontracts, contracts, [or] amendments" with small business subcontractors as part of its own Factor 4 proposal.[7] *See* AR Tab 106 at 10213-25.

Finally, as with the "shareholder network subcontractors" discussed in Section II.C.2 above, HNFS' request for TriWest's various agreements with small businesses improperly seeks information HNFS hopes will undermine the Agency's determinations based on information that was not required by the RFP to be submitted to or evaluated by the agency and, thus, properly was not considered by DHA's evaluators. For the Court to review information that was neither required nor evaluated would transform the limited bid protest review under the arbitrary and capricious standard into an improper *de novo* evaluation of proposals. *See*, *e.g.*, *Dolphin Park*, 159 Fed. Cl. at 666-67. HNFS' request for documents with which it hopes to undermine TriWest's Factor 4 proposal is unsupported and should be denied.

---

[7]    Like TriWest's proposal during corrective action, HNFS named some of its planned small business subcontractors and stated that it planned to meet the overall 25% percentage goal for small business subcontracting. AR Tab 106 at 10215, 10217; AR Tab 150 at 13992.

### D.    Interrogatories Posed by HNFS Are Overbroad, Improper, and Unnecessary

####     1.    HNFS' Interrogatories Seek Details of TriWest's Planned Subcontract Spending Not Required by the RFP

HNFS' first four interrogatories seek information about how TriWest's initial and revised subcontracting plans were developed—information that was not required by the RFP and was not evaluated by the Agency. In particular, HNFS wants a comprehensive listing of all entities and projected costs excluded from TriWest's initial and revised subcontracting plans (Interrogatory Nos. 1-2), as well as the identification of all subcontractors in TriWest's subcontracting plans and all associated cost projections. These interrogatories are unsupported and should be rejected.

####     a.    HNFS Offers No Evidence of a Misrepresentation Related to the Information It Seeks in the First Four Interrogatories

In the first two interrogatories set forth in its Discovery Motion, HNFS asks the Court to order TriWest to provide detailed information regarding identities of, and the projected costs associated with, entities in all categories of subcontractors that were excluded from the small business calculations submitted both before and after the Agency took corrective action. In its **Interrogatory No. 1**, HNFS lists the categories of excluded costs identified in TriWest's pre-corrective action small business plan and asks:

> For each of the following categories, identify each of the entities and their individual associated costs (by entity) that TriWest asserted it "excluded" from TriWest's July 20, 2022 Subcontracting Plan (*see* [AR Tab 146 at 13955]):
>> "Supplies and services provided by employees - $█████"
>> "Governmental units and government-endorsed monopolies - $████"
>> "Non-biddable costs - $████"
>> "Affiliated Network Subcontractors - █████"
>> "Non-Affiliated Network Subcontractors - $█████"

Discovery Mot. at 21. And in **Interrogatory No. 2** regarding TriWest's post-corrective action Small Business Subcontracting Plan, HNFS asks:

27

> For each of the following categories, identify each of the entities and their individual associated costs (by entity) that TriWest asserted it "excluded" from TriWest's March 3, 2023 Subcontracting Plan (*see* [AR Tab 150 at 13989]):
>
>> "TriWest agreements with affiliates"
>> "employee costs"
>> "costs for services purchased from 'governmental government endorsed-monopolies'"

*Id.* at 21-22.

HNFS' motion fails to identify much less explain any alleged misrepresentation that TriWest purportedly made that would be relevant to these interrogatories. HNFS argues that "[c]entral to this protest are the dollars that TriWest included and . . . excluded" from its T-5 subcontracting plans, and complains that TriWest has not explained specifically "how they were calculated." *Id.* at 22-23. But HNFS does not and cannot explain how TriWest effected a any type of "misrepresentation" by ***stating in its subcontracting plans*** the categories of subcontractors that TriWest was excluding from its calculations. Neither the RFP (§ L.5.2) nor the incorporated FAR provision (19.704(a)(2)) required such an explanation nor anything more than a statement regarding the "total dollars planned to be subcontracted" and "total dollars planned to be subcontracted by small business." HNFS has not identified any specific alleged false statement and there is no basis for HNFS to demand the right to audit underlying data that the RFP did not require to be submitted in connection with an offeror's subcontracting ***plan.*** Indeed, HNFS also did not provide such underlying data in its proposal. AR Tab 106 at 8-9).

In its subcontracting plan and EN responses, TriWest plainly stated the categories of projected costs that were being excluded from the subcontract spending projections. *See* AR Tab 102 at 7331; AR Tab 150 at 13989. Indeed, the clarity of TriWest's explanations is shown by HNFS' lists of TriWest's different pre- and post-corrective action categories of exclusions as

recounted in its interrogatories. Discovery Mot. at 21-22. HNFS complains that some categories of costs were improperly excluded from small business calculations. *Id.* at 21-23. However, given that TriWest did explain in its proposal that its subcontracting plan calculations excluded the costs cited in the discovery requests, HNFS' challenge is actually attacking the propriety of TriWest's stated exclusions from its subcontracting plan rather than any alleged false statement regarding whether those categories of costs had, in fact, been excluded.

In sum, TriWest informed DHA regarding the types of planned costs that were being excluded from the calculations in its Small Business Subcontracting Plan. During corrective action, DHA determined that certain categories of costs excluded by TriWest were required to be included in the Small Business Subcontracting Plan calculations. As a result of those discussions, TriWest revised its Small Business Subcontracting Plan and continued to accurately represent the new categories of subcontracts (which had changed from the initial proposal) being excluded. To the extent the Agency might have disagreed with the revised list of cost categories TriWest told the Agency it was excluding, then those issues could have been the subject of further discussions with the Agency (or even a potential negative finding by the Agency). TriWest's listing of categories of excluded costs is not, however, evidence of a false statement in TriWest's plan.

### b. HNFS Also Fails To Support its Assertion That TriWest Misrepresented the Total Values of Projected Subcontract Amounts in Its Small Business Subcontracting Plan

HNFS' Discovery Motion also seeks detailed information regarding the identities of all subcontractors on which TriWest expected to rely in its initial and revised Small Business Subcontracting Plans, as well as the projected costs associated with those planned subcontractors. Specifically, **Interrogatory Nos. 3 and 4** ask that TriWest be required to:

> [No. 3]: Identify all subcontractors relied on in TriWest's initial subcontracting plan ([AR Tab 102 at 7331-46]) and the costs associated

29

with each such subcontractor that were included in TriWest's proposed $███████ "value of projected subcontracts" (*id*. at 46).

[No. 4]: Identify all subcontractors relied on in TriWest's revised subcontracting plan ([AR Tab 150 at 13989-14004]) and the costs associated with each such subcontractor that were included in TriWest's proposed $███████ "value of projected subcontracts" (*id.* at 14).

Discovery Mot. at 23. HNFS asserts that because "small and other-than-small businesses" were "improperly excluded . . . from [TriWest's] subcontracting plan," TriWest "must produce a complete list of its subcontractors and their associated costs" so that the Court can "accurately ascertain which subcontractors and subcontract costs TriWest actually included in its denominator." *Id.* at 23-24.

In its initial and revised Small Business Subcontracting Plans, TriWest stated the "Total value[s] of projected subcontracts" as well as the different sets of costs that were excluded in calculating those projected total values. AR Tab 102 at 7331; AR Tab at 13989. HNFS disagrees with TriWest, the Agency, and GAO regarding the propriety of those exclusions—but HNFS cannot deny that the total amounts at issue and the fact that TriWest was proposing a Small Business Subcontracting Plan with such exclusions was clearly set forth in TriWest's plans. The details that HNFS seeks in these interrogatories were not required to be included in the proposals by the RFP (as discussed further below), and the explanations that TriWest provided to DHA did not hide the exclusions, which the Agency understood. AR Tab 160 at 14025; AR Tab 161 at 14030; AR Tab 214 at 17358-60). HNFS offers no evidence of any alleged misrepresentation.

HNFS can attempt to demonstrate, based on the existing record, that TriWest's excluded cost categories were legally erroneous under the applicable regulations (albeit contrary to the Agency's and GAO's determinations). Although HNFS hopes to elaborate or expand its allegations with subcontractor identities and the underlying excluded cost amounts, the legal

error alleged by HNFS does not depend upon the information sought in the interrogatories and will not change. HNFS' request asks for additional details that the RFP did not require offerors to submit and which DHA did not request during discussions, and that were not needed for its review and source selection decision. The requests for interrogatory responses should be denied.

       **c.**      **HNFS Cannot Properly Ask Detailed Interrogatories About TriWest's Potential Small Business Performance—Information That Was Not Sought by the RFP Or Evaluated by DHA**

Finally, in addition to the fact that its requests for information are not based on cognizable misrepresentation claims, HNFS' first four interrogatories improperly to seek information that was not sought by the RFP or required to be evaluated by the Agency. We explained in Section II.C.3 above that the relevant RFP proposal instruction, Section L.5.2, incorporated FAR 19.704 (and other provisions)—and did not ask for the detailed information sought in HNFS' document requests. The same is true with respect to these interrogatories.

Section L.5.2 of the RFP required other-than-small offerors like HNFS and TriWest to "include in Volume I a subcontracting plan." As the name of the required document made clear, the RFP sought a "plan," *i.e.*, a forward-looking explanation of how the offeror planned to satisfy the Agency's subcontracting ***goals*** following a transition period in performance of the contract over the subsequent nine years. Relevant to HNFS' interrogatories, the RFP (and FAR) only required that an offeror submit a plan containing a "statement of the ***total*** dollars planned to be subcontracted and a statement of the total dollars planned to be subcontracted to small business." AR Tab 87 at 5594 (emphasis added). The RFP also reflects the Agency's need to understand how the goals would be accomplished by having each offeror (among other things):

- identify the types of supplies and services to be subcontracted to different types of small businesses;
- explain how the subcontracting goals were developed;

31

- describe how small business sources would be identified for solicitation purposes;

- state whether indirect costs had been included "in establishing subcontracting goals" and how the proportionate share of indirect costs to be incurred was allocated among different small business types;

- name the employee responsible for the administration of the subcontracting program;

- discuss how different types of small businesses will have an equitable opportunity to compete for subcontracts; and

- provide a series of assurances that necessary steps will be taken to accomplish and provide reporting on the offeror's achievement of (or problems with) the goals.

*Id.* at 5595-96 (RFP § L.5.2, ¶¶ (3)-(13)).

None of these provisions—or anything else in the RFP or the FAR—instructed offerors to provide a detailed cost or technical proposal to justify how the subcontracting goals were developed, or indicated that such details would be relevant for the Agency's assessment of a "plan."[8] HNFS should not be allowed to challenge the Agency's analysis of proposals under the stated terms of the RFP simply because HNFS wants to use information not required by the RFP to undercut the Agency's award decision; such discovery would transform this protest proceeding before the Court into an improper *de novo* review based on internal offeror data that neither TriWest nor HNFS submitted or were required by the RFP to develop and submit to DHA. Because such a review would be inconsistent with the arbitrary and capricious standard of review, the discovery requests leading to such a review should not be allowed.

> **d.** **HNFS' Interrogatories Regarding TriWest's *Initial* Small Business Plan Have Been Overtaken By Events, Are Irrelevant, and Should Be Denied**

In addition to the problems with HNFS' interrogatories regarding **both** TriWest's initial and revised Small Business Subcontracting Plans discussed in Subsections II.D.1.a to II.D.I.c

---

[8]    Although an incumbent contractor (such as HNFS) may have detailed information regarding its subcontracting history on the TRICARE contract, a non-incumbent would not—and the Agency did not require or evaluate such information.

above, HNFS' request for information related to TriWest's exclusions from its initial (July 20, 2022) Small Business Subcontracting Plan fail for an additional reason: Interrogatory No. 1 and Interrogatory No. 3 also are improper because they seek discovery regarding a proposed Small Business Subcontracting Plan that was not the basis of the T-5 award and is moot.

During the Agency's corrective action process, TriWest unquestionably submitted a revised Small Business Subcontracting Plan after the Agency asked a series of questions regarding TriWest initial plan in two ENs and permitted both TriWest and HNFS to submit revised plans. Because TriWest's initial plan was no longer under consideration when TriWest's revised plan was submitted in response to EN 2, the initial plan is not relevant to this protest. TriWest's initial subcontracting plan is included in the record before the Court as it is called for by RCFC Appendix C and was in the record before GAO. AR Tab 102 at 7331-46. But HNFS' interrogatories regarding the initial plan are seeking additional information underlying a plan that has been overtaken by events. We have located no precedent—and are aware of no logic—supporting the notion that a plaintiff can obtain discovery related to part of a proposed subcontracting plan that was superseded and not part of the basis of award being challenged in a bid protest before this Court. To the contrary, the acceptability of TriWest's initial Small Business Subcontracting Plan is immaterial because the "evaluation of [a bidder's] initial proposal is irrelevant" after final proposals have been submitted. *Computer Sciences Corp. v. United States*, 51 Fed. Cl. 297, 308 (2002).

2.    **HNFS Is Not Entitled To Additional Information Regarding When or Whether TriWest Initially Excluded Affiliated and/or Non-Affiliated Network Subcontractors from Small Business Subcontracting Plans in Prior Government Procurements**

In its **Interrogatory No. 5**, HNFS asks the Court to require TriWest to:

> Identify when TriWest first excluded network subcontractors (Affiliated Network Subcontractors and/or Non-Affiliated Network Subcontractors) from a subcontracting plan for a U.S. Government procurement, and whether TriWest has consistently utilized such exclusions since that date.

Discovery Mot. at 24-25. In its response to EN No. 2, TriWest explained its belief "in good faith" that the amounts not included in its Small Business Subcontracting Plan spending calculations "could be excluded in reliance on guidance" TriWest received in ▮▮▮ from ▮▮▮ ▮▮▮, a responsible Government representative. AR Tab 150 at 13987. That said, as a result of the discussions that TriWest had with the Agency after corrective action was taken in this procurement, TriWest realized that its previous "understanding appears to have been mistaken," *i.e.*, that some of the exclusions were not acceptable to the Agency. Accordingly, TriWest submitted "a revised subcontracting plan that includes the subcontract dollars allocated to Non-Affiliated Subcontractors." *Id.*

HNFS argues that because TriWest relied on its "historical experience in similar lines of business" to develop its initial subcontracting plan, TriWest should be required to "explain when [it] began excluding network subcontractors from its subcontracting plans." Discovery Mot. at 25. But there is no reason for such discovery as HNFS has failed to make a plausible allegation of any misrepresentation related to this procurement. As explained above, TriWest's non-inclusion of the categories of costs was plainly and accurately disclosed to the Agency in TriWest's initial proposal. *See* AR Tab 102 at 7331. Because HNFS has failed to present a

plausible allegation of a material misrepresentation related to the T-5 procurement, there is no

basis to order discovery and explore TriWest's historical proposal preparation practices.

### 3. HNFS Presents No Basis To Obtain Discovery Regarding TriWest's Contracts with a Non-Subject Agency—the VA

In its final request (**Interrogatory No. 6**), HNFS asks the Court to require TriWest to

provide information related to purported misrepresentations that HNFS speculates were made to

another Agency, *i.e.*, the VA. HNFS asks the Court to require TriWest to explain:

> For each of TriWest's VA PC3, CCN R4, and CCN R5 contracts, identify
> (via a "yes" or "no" answer) whether TriWest used any of the following
> exclusions at any point during proposal submission or contract
> performance:
>
> > Supplies and services provided by employees.
> > Governmental units and government-endorsed monopolies.
> > Non-biddable costs.
> > Affiliated Network Subcontractors.
> > Non-Affiliated Network Subcontractors.
>
> For any "yes" answers, identify the specific exclusions used and whether
> they were used during proposal submission, contract performance, or both.

Discovery Mot. at 25-26.

HNFS asserts that TriWest's purported misrepresentations to the VA "directly relevant to

TriWest's [purported] material misrepresentation of its compliance with FAR 52.219-8 and FAR

52.219-9, as well as historical small business subcontracting spending and percentages."

Discovery Mot. at 26. However, HNFS' attempt to obtain discovery is legally unsupported to the

extent that it seeks information from TriWest regarding its previous negotiations with VA of

subcontracting plans under other procurements not at issue here, and regarding TriWest's past

performance of contracts with VA that are not at issue here.

These requests are legally unsupported because this Court has previously made clear that

supplementation of an administrative record "should not extend to materials considered only by

other agencies . . . because *Axiom* limits supplementation to the record before the agency during [the] procurement" at issue. *CGS-ASP Security, JV v. United States*, 162 Fed. Cl. 783, 801 (2022). After all, "if non-subject agencies' internal processes outside the solicitation or evaluation became part of a procurement record, the administrative record would have no end. In this case, the omission of the [requested documents] does not preclude judicial review because the record is complete, . . . and plaintiff is asking to supplement the record with records from other agencies." *Id.*

Moreover, as explained above, HNFS ignores the very language and meaning of the regulations on which it relies. Most notably, FAR 52.219-9(k) provides that "the failure of the Contractor to comply in good faith with . . . an approved [Small Business Subcontracting Plan] required by this clause[] shall be a material breach of the contract and may be considered in any past performance evaluation of the Contractor." Under that regulation, the terms of the small business subcontracting plans were negotiated between the VA and TriWest for the referenced VA contracts and provide the basis against which performance would be measured and under which any remedy would lie for breach of any related promises. Importantly, what that regulation does ***not*** require is that an offeror like TriWest (or HNFS) must disclose or explain to a procuring like DHA how its subcontracting plans for prior contracts with other agencies, like those with VA, were developed and what such plans did or did not include or exclude. HNFS's complaint invents its own imaginary requirements that appear nowhere in the RFP or the FAR or under the established standards for consideration of a bid protest in this Court.

HNFS does not allege that the eSRS past performance data submitted by TriWest were themselves constituted false statements. Instead, as with its other allegations, HNFS appears to be claiming that the eSRS data reported by TriWest reflected an incorrect compliance with

36

regulations under those contracts with a non-subject agency: VA. But HNFS does not allege that VA's past performance assessments are not based on the terms that VA and TriWest agreed upon for the subcontracting plans applicable to those VA contracts. Thus, even if TriWest's Small Business Subcontracting Plans with the VA did exclude categories of costs similar to TriWest's initial exclusion of certain categories of costs proposal in this procurement, those plans were – by definition – accepted by the VA and, as such, must be the actual basis of the VA's past performance evaluation. Not only would there be no misrepresentation to the extent TriWest's VA plans were consistent with its initial proposal to DHA (because TriWest would have disclosed, not misrepresented, the exclusions), but those plans must be the basis for future past performance evaluations (unless they are subsequently renegotiated or otherwise modified). HNFS's own theory, therefore, proves that there is no false statement, which is why none is alleged.

### E.    HNFS' Supplemental Interrogatory and Document Request to the Government Are Likewise Unsupported and Unnecessary

HNFS' Supplemental Discovery Motion asks for two related discovery requests of the Government. First, HNFS' **New Interrogatory No. 7**, asks the Government to:

> Explain when and how the Contracting Officer received the ███████ email; identify all DHA personnel, other than the Contracting Officer, who reviewed the █████ email prior to the corrective action award to TriWest; and explain why DHA did not produce the ████████ email before GAO.

*Id.* HNFS then asks that the DHA be required to produce any communication with TriWest, including TriWest's attorneys, related to the ██████ email. Specifically, **New Document Request No. 4** asks that the Government be required to:

> Produce all communication(s) with TriWest (including but not limited to TriWest protest counsel) in which the Government discussed, requested, and/or received the ████████ email or documents related thereto.

37

███████████████████████████

Supp. Discovery Mot. at 6. This request is moot because the ███ email in question has already been included provided to HNFS by the Government, as admitted by HNFS, see Supp. Discovery Mo. Ex. 2, and is included in the record at AR Tab 424, with contextual documentation from that period produced at AR Tab 425.

As noted above, the ███ email includes express direction from ██████████ ████████████ under DoD's ███ procurement (a precursor to the T-5 procurement at issue in this protest proceeding) that confirms that TriWest's statement regarding its reliance on that email's direction regarding the treatment of network agreements in subcontracting plans was made in good faith. *See* AR Tab 424 at 58025 and AR Tab 150 at 13987. Thus, the ███ email from ████████ itself demonstrates that TriWest did not make a false statement to DHA in referring to that ███ email during discussions with DHA after corrective action in the T-5 procurement. HNFS has not made any other allegations regarding a misrepresentation in connection with that email.

Moreover, the record contains more than 200 pages of contextual documentation regarding that ███ email and DoD's consideration of exclusions from subcontracting plans in the ███ procurement. In fact, the contextual documentation confirms that TriWest was not the only offeror in the ███ procurement that proposed to exclude significant subcontracting opportunities from its Small Business Subcontracting Plan for the ███ procurement. *See, e.g.,* AR Tab 425 at 58158, 58170, and 58218.

Given that the email and the contextual documentation has already been placed in the record, and give that this record the does not support any of HNFS' allegations of misrepresentation, and given that HNFS has made no other allegations of any other false

statements relating to the ███ email, the Court should deny HNFS' motions for discovery

regarding the ███ email.

The contention by HNFS that additional contextual documentation is or should have been

relevant to DHA's evaluation during corrective action is unavailing. In a procurement-related

action pursuant to 28 U.S.C. § 1491(b), the Court is must base its APA review of agency action

on "'the full administrative record that was before the [agency decision maker] at the time he

made his decision.'" *East West, Inc. v. United States*, 100 Fed. Cl. 53, 56 (2011)

(quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)). The

government has produced documents including communications related to the ████████

email that were considered and relied upon when DHA made the award decision at issue in this

protest. HNFS cites no authority (and we are aware of none) supporting the assertion that

communications must be included in the administrative record even though they were not were

not considered as part of the agency's decisionmaking process.

At its core, Document Request No. 4 demands a historical adventure exploring matters

from ████████ in search for confirmation of suspicions held by HNFS that have been

disproven by the materials already exhumed from that period. Further exhumation is unlikely to

reveal evidence relevant to the protest issues presented to the Court, and HNFS has offered no

allegations of specific false statements that any evidence indicates were made by TriWest.

While HNFS also complains that the ███ email and contextual documents were not

available during the GAO protest proceeding, HNFS cannot show any prejudice because the

███ email and related documents actually reviewed by the Agency do not support HNFS'

allegations. Even if the requested communications would shed additional light on how the GAO

record was composed, HNFS has not shown how, under Ax*iom*, that the omission of such extra-

record communications would effectively preclude judicial review of the source selection decision at issue. And as noted above, neither supplementation nor discovery is permissible "merely because the proponent of such measures believes that it will 'improve the court's "understanding" of a case.'" *Connected Glob.*, 159 Fed. Cl. at 805 (quoting *NEQ,* 86 Fed. Cl. at 593).

### *Conclusion*

For the reasons set forth above, HNFS' Motion for Discovery and Supplemental Motion for Discovery should be denied.

Respectfully submitted,

Co-Counsel:

s/ Marcia G. Madsen

Robert S. Ryland
H. Boyd Greene
Ashley Pincock
Kirkland & Ellis LLP
1301 Pennsylvania Ave., NW
Washington, D.C. 20005
(202) 389-5086
rryland@kirkland.com

Marcia G. Madsen
    *Counsel of Record*
Luke Levasseur
Evan C. Williams
Mayer Brown LLP
1999 K Street, NW
Washington, D.C. 20006
Tel (202) 263-3000
Fax (202) 263-5274
mgmadsen@mayerbrown.com

Kathleen C. Little
Robert J. Rothwell
Robert D. Vander Lugt
Amanda J. Dietrick
Jenny J. Yang
Little, Rothwell & Vander Lugt PLLC
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 888-6721
amanda.dietrick@lrvlaw.com

September 1, 2023

Counsel for TriWest Healthcare Alliance Corp.